UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>   vs.<br><br>PATRICK OKROI,<br><br>           Defendant. | CR. 17-50073-01-JLV<br><br>ORDER |

**INTRODUCTION**

Defendant Patrick Okroi, appearing *pro se*, filed a motion for compassionate release together with a packet of his medical and administrative records from the Bureau of Prisons ("BOP"). (Dockets 197 & 197-1). Pursuant to Amended Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on his motion. (Dockets 200, 201 & 206-08). The court ordered the government to acquire and file additional BOP medical records of Mr. Okroi. (Docket 212). The supplemental medical records were filed. (Docket 213). The parties then filed supplemental briefs. (Dockets 214-15). For the reasons stated below, defendant's motion is denied.

**AMENDED STANDING ORDER 20-06**

Amended Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a

---

[1]See https://www.sdd.uscourts.gov/socraa.

procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (ASO 20-06 at p. 1). By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id.

¶ 4. Those categories are:

    a.    High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § 1.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.    Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

    c.    Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

    d.    Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id.

## MR. OKROI'S CLASSIFICATION

The FPD and the U.S. Attorney filed a notice designating Mr. Okroi as an Intermediate Priority case. (Docket 198).

## FACTUAL BACKGROUND

Mr. Okroi pled guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1) & 841(b)(1)(A). (Dockets 91 & 99-100).

Mr. Okroi was sentenced to a term of imprisonment of 120 months with the sentence to run concurrent with a state court conviction followed by five years of supervised release.   (Docket 163 at pp. 2-3).

Mr. Okroi is currently an inmate at FMC Ft. Worth, a secure medical facility in Fort Worth, Texas.   Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last checked December 21, 2022).   The total inmate population at FMC Ft. Worth is currently 1,643 persons.   https://www.bop.gov.locations/institutions/ftw/ (last checked December 21, 2022).   As of December 21, 2022, there are five active COVID-19 cases among inmates and three active cases among staff at FMC Ft. Worth.   https://www.bop.gov/coronavirus/ (last checked December 21, 2022).   FMC Ft. Worth reported 18 deaths of inmates and no deaths of staff as a result of COVID-19, and 540 inmates and 73 staff have recovered as of December 21, 2022.   Id.

Mr. Okroi has a scheduled release date of March 27, 2027.[2]   https://www.bop.gov/inmateloc/ (last checked December 21, 2022).   See also Docket 201 at p. 480.   As of January 1, 2023, he has served approximately 42.8% of his statutory sentence, and under his current status in the BOP, Mr. Okroi is eligible for home detention on September 27, 2026.   Id.   Mr. Okroi is 66 years old.   Id. at p. 1.

---

[2]There remains an outstanding detainer and warrant from the State of Nevada for a probation violation.   (Docket 201 at p. 482).

## MR. OKROI'S MOTION

Mr. Okroi's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his medical condition. (Docket 197). The parties acknowledge and it is undisputed Mr. Okroi has suffered a number of cardiac arrests and been diagnosed with congestive heart failure, with an implantable cardiac defibrillator, in addition to Type II diabetes, chronic viral Hepatitis C, obesity and hypothyroidism as well as a number of other serious medical conditions. (Dockets 214 at p. 1 and 215 at p. 2) (referencing Dockets 206 at pp. 1 & 6; 207 at p. 2 and 213 at pp. 90-93). Recently, Mr. Okroi was diagnosed with Stage 3 chronic kidney disease and chronic obstructive pulmonary disease ("COPD"). (Docket 213 at pp. 15, 32, 47-48 & 151-52)

The court conducted a detailed review of Mr. Okroi's medical records and accepts the parties' recognition of his medical condition and diagnoses. The BOP medical records reflect Mr. Okroi received two doses of the Pfizer COVID-19 vaccine on December 18, 2020, and January 7, 2021. (Docket 200 at pp. 70 & 562). He received a Pfizer booster on February 10, 2022. (Docket 213 at p. 101).

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the

4

> Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The court finds Mr. Okroi exhausted the administrative procedure provision contemplated by § 3582(c)(1)(A) as the warden failed to respond to defendant's request within the 30 days. See Dockets 206-1. The government does not argue the administrative exhaustion requirement was not satisfied. (Docket 207). Accordingly, Mr. Okroi's motion may be addressed on its merits.

**Extraordinary and Compelling Reasons**

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). That task was left to the United States Sentencing Commission. "[I]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

5

Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling. U.S.S.G. § 1B1.13 comment. n.1. The four categories have not been updated since December 2018 when the First Step Act became law.[3]

The United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits have addressed the court's authority under the First Step Act.[4] See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); McCoy, 981 F.3d at 271; United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); and United States v. Gunn, 980 F.3d 1178 (7th Cir. 2020). Addressing Section 404(c) of the First Step Act, the Supreme Court recently held "the First Step Act allows district

---

[3]Until recently the United States Sentencing Commission lacked a quorum and the newly established commission has not amended the United States Sentencing Guidelines.

[4]The United States Court of Appeals for the Eighth Circuit had several opportunities to address this issue but declines to do so.  United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. 2020) and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).  At best, the Eighth Circuit skirted resolving the issue by proclaiming "the First Step Act in 2018 did not change the discretion afforded the district court."  United States v. Marcussen, 15 F.4th 855, 859 (8th Cir. 2021) (internal citation omitted).  See also United States v. Avalos Banderas, 39 F.4th 1059, 1061 (8th Cir. 2022) ("the court did not abuse its discretion by considering whether compassionate release would reduce [defendant's] risk of contracting COVID-19 or developing complications.").

courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." Concepcion v. United States, ___ U.S. ___, 142 S. Ct. 2389, 2404 (2022). The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Turning to that task, medical records substantiate Mr. Okroi's serious health conditions as identified above. Congestive heart failure, Type II diabetes, and obesity, chronic kidney disease and COPD are included on the CDC's list of risk-increasing conditions.[5] See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 21, 2022). Regardless of age, such conditions increase the risk of severe illness from COVID-19. Id. Additionally, it is also instructive that CDC guidance explains "[a] person's risk of severe illness from COVID-19 increases as the number of underlying medical conditions they have increases." Id.

---

[5]The CDC indicates adults of any age *are* at increased risk of severe illness from COVID-19 if they have certain conditions, including cancer . . . heart conditions (such as heart failure, coronary artery disease, or cardiomyopathies), . . . . See People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated December 6, 2022). The CDC identifies hypertension as a condition that *might* increase the risk from COVID-19. Id.

The CDC has identified factors that increase community spread of COVID-19 and individual risk, including crowded situations, enclosed spaces and close or physical contact among people, especially for longer durations.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcovid-data%2Finvestigations-discovery%2Fhospitalization-underlying-medical-conditions.html (last updated November 29, 2022).

The court recognizes the efforts BOP has taken to prevent and mitigate outbreaks.  See BOP Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated November 25, 2020). Nevertheless, despite the efforts to slow the spread of COVID-19 in prisons, the practical reality is many of the factors increasing community spread and individual risk of exposure to the virus are simply unavoidable in a prison setting.   Nor can the court ignore the potential of infection when the risk for Mr. Okroi is significant.   The new strains and variants of COVID-19 only add to the risk and uncertainty.   The court recognizes the BOP's implementation of a COVID-19 vaccination program.   See BOP: COVID-19 Update, https://www.bop.gov/coronavirus/.

It is evident Mr. Okroi's treatment at FMC Ft. Worth has been successful in treating his numerous medical conditions.   Mr. Okroi is in a Care Level 3 classification.   (Docket 213 at pp. 38 & 41).   According to the BOP Legal

Resource Guide, the BOP "carefully considers the offender's health status" and "provides extensive medical services," so "a defendant's medical condition generally will not preclude a sentence to BOP custody." https://www.bop.gov/resources/pdfs/legal_guide_march_2019.pdf, at p. 27 (last accessed December 21, 2022). Each "inmate is assigned a medical 'Care Level,' based on his . . . medical history as described in the Presentence Report and other available information." Id. By implementing the care level system the goal "is to assign inmates with greater medical needs to those facilities with more comprehensive on-site medical resources, and to provide more effective and efficient access to community-based health care for each inmate." Id. "Inmates with Care Level 3 needs are fragile outpatients who require frequent clinical contacts, and/or who may require some assistance with activities of daily living, but do not require daily nursing supervision." Id. "This Care Level may include stabilization of medical or mental health conditions that may require periodic hospitalization. Other examples of this Care Level are patients with cancer in remission less than a year, advanced HIV disease, severe mental illness in remission on medication, severe congestive heart failure, and end-stage liver disease." Id. For level 3 inmates, "the medical need of the inmate is the primary factor in the designation decision." Id. As a medical center, FMC Ft. Worth provides "ambulatory care services for its general population inmates," and "supports a 76-bed medical unit for Care Level 4 inmates needing 24-hour nursing care." Id. at p. 29.

According to Mr. Okroi's BOP medical records his heart condition with the implanted device is "asymptomatic with normal device function," his other conditions are "within normal limits" and he is ambulatory. (Docket 213 at 1, 26 & 61). FMC Ft. Worth is accommodating Mr. Okroi's condition by placing him in a lower bunk in a first floor cell and limited his physical activities. Id. at p. 102. While it is true Mr. Okroi will not recover from his medical conditions, it is evident FMC Ft. Worth is appropriately addressing them and providing him with the medical care and treatment commensurate with those conditions. With this record, the court finds Mr. Okroi cannot meet his burden of proof and does not present extraordinary and compelling reasons under § 3582(c)(1)(A)(i).

**3553(a) Factors**

The court concludes the § 3553(a) factors do not support relief. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from further crimes of the defendant, among others. Id. § 3553(a)(1)-(7).

Mr. Okroi pled guilty to conspiracy to distribute a controlled substance, methamphetamine. (Dockets 91 & 99-100). The remaining count of the indictment, possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1), was dismissed as part of the plea agreement. (Dockets

1 at pp. 2-3 and 91 ¶ C).   Mr. Okroi's factual basis statement acknowledges he was actually in possession of eight firearms at the time of his arrest.   (Docket 92 at pp. 1-2).

At sentencing, the court adopted Mr. Okroi's presentence investigation report without change.   (Docket 152-1 at p. 1).   The crime of conviction was Mr. Okroi's fourth drug related offense dating back to 2012.   (Docket 153 at pp. 11-12).   Mr. Okroi acknowledged that during the conspiracy he was responsible for bringing 25 pounds of methamphetamine into the State of South Dakota.   Id. ¶ 25.   At the time of sentencing, with a criminal history score of 35, Mr. Okroi was in criminal history category III.   Id. ¶ 78.

While Mr. Okroi expressed an interest in substance abuse treatment, he has not yet had an opportunity to fully participate in the BOP intensive substance abuse treatment program the court recommended to the BOP.  (Docket 163 at p. 2).   The court finds his time in custody is insufficient to help him break the cycle of drug abuse.   (Docket 213 at p. 483).   Hopefully, Mr. Okroi will find that path and sincerely devote himself to substance abuse treatment while in custody.

The court sentenced Mr. Okroi to 120 months in BOP custody.   That sentence reflects the seriousness of his offense, provides appropriate punishment, promotes respect for the law and hopefully deters criminal conduct.

**ORDER**

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 197) is denied.

Dated January 25, 2023.

       BY THE COURT:

       /s/ *Jeffrey L. Viken*
       JEFFREY L. VIKEN
       UNITED STATES DISTRICT JUDGE